982 So.2d 77 (2008)
Robert E. GONZALEZ, Appellant,
v.
STATE of Florida, Appellee.
No. 2D06-1619.
District Court of Appeal of Florida, Second District.
April 30, 2008.
James Marion Moorman, Public Defender, and Alisa Smith, Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Cerese Crawford Taylor, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Judge.
Robert Gonzalez appeals his judgment for second-degree murder and sentence of life imprisonment as a prison releasee reoffender. He raises only two issues on appeal. We affirm, but write to address Mr. Gonzalez's argument that he was entitled to a twelve-person jury rather than a *78 six-person jury to decide his case because he faced a mandatory life sentence, without possibility of parole, upon his conviction for the charged crime.[1]
Florida is one of only two remaining states that regularly use six jurors to decide the outcome of criminal cases in which life imprisonment is a mandatory sentence if the defendant is found guilty of the charged offense.[2] The common-law tradition of twelve jurors for such important criminal cases is overwhelmingly recognized as the better policy throughout the United States.
Article 1, section 22, of the Florida Constitution allows the legislature to establish the number of jurors for cases, both civil and criminal, so long as a jury contains at least six jurors. Mr. Gonzalez acknowledges that the United States Supreme Court has expressly held that Florida's use of a six-person jury in a criminal case does not violate the Sixth Amendment right to jury trial as applied to the states through the Fourteenth Amendment. See Williams v. Florida, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). He argues, however, that subsequent scholarship and data developed after Williams now call into question that Court's assumption that "the reliability of the jury as a factfinder hardly seems likely to be a function of its size," id. at 100-01, 90 S.Ct. 1893, and in fact demonstrate that the functions and purposes of a jury cannot constitutionally be fulfilled by a jury of six. See, e.g., Ballew v. Georgia, 435 U.S. 223, 245, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978) (holding that trial on misdemeanor criminal charges before a five-member jury deprived the defendant of his right to trial by jury as guaranteed by the Sixth and Fourteenth Amendments). His argument is worthy of consideration, but this court has no authority to overrule the precedent from the United States Supreme Court that endorsed the use of a jury with only six members as constitutional, nor the Florida law that authorizes and perhaps compels the use of six-member juries in non-capital criminal cases.

I. THE FACTS
In 2003, Mr. Gonzalez, a pizza deliveryman, was charged with second-degree murder after he stabbed a coworker to death at a pizza parlor. He used one of the restaurant's large kitchen knives to attack his coworker during an ongoing dispute over money. The crime was witnessed by a number of other employees at the pizza parlor. At trial, Mr. Gonzalez primarily argued that he acted in self-defense. Mr. Gonzalez, who had been released from prison on an unrelated crime two years earlier, faced a mandatory life sentence for this charge because he qualified for, and the State sought, a sentence as a prison releasee reoffender. See § 775.082(9)(a)(1), (3)(a), Fla. Stat. (2005).
*79 Prior to trial, Mr. Gonzalez filed a motion asking the court to empanel a twelve-person jury to hear his case. Mr. Gonzalez sought an evidentiary hearing on this motion for the purpose of presenting testimony and documentary evidence supporting the argument that a jury of six is inferior in its functioning to a jury of twelve. The court concluded it was bound by the United States Supreme Court's decision in Williams no matter what testimony or documentary evidence might say about the comparative functioning of different-sized juries and denied the motion without an evidentiary hearing. Mr. Gonzalez was tried by a six-person jury, which returned a verdict of guilty as charged. Mr. Gonzalez was declared a prison releasee reoffender and sentenced to life in prison.

II. THE TRIAL COURT USED THE CORRECT JURY INSTRUCTION ON JUSTIFIABLE USE OF FORCE
Mr. Gonzalez first argues in this appeal that although he committed this crime in 2003, the trial court was required to instruct the jury on the justifiable use of force in accordance with the 2005 amendments to section 776.013, Florida Statutes (2005). These amendments limited a person's duty to retreat when confronted with force. See ch. 2005-27, §§ 1, 5, Laws of Fla. (effective Oct. 1, 2005). While this appeal was pending, however, the Florida Supreme Court resolved this issue, holding that section 776.013(3) does not apply to events occurring before its enactment. See Smiley v. State, 966 So.2d 330 (Fla. 2007). Accordingly, we affirm on this issue without further discussion.

III. THE CONSTITUTIONALITY OF A SIX-PERSON JURY
In his second issue on appeal, Mr. Gonzalez seeks reconsideration of established precedent that supports and perhaps requires the use of six-person juries to decide serious felony cases like his, in which a criminal defendant faces a mandatory life sentence if convicted of the charged offense. He argues that existing empirical data and studies support such a reconsideration, and that at the very least, he was entitled to an evidentiary hearing to present evidence regarding the now-existing empirical data and studies on the comparative functioning of six- and twelve-member juries.

A. The Trial Court's Refusal to Hold an Evidentiary Hearing.
Initially, we agree with the trial court that an evidentiary hearing was not called for under these circumstances. Mr. Gonzalez sought a hearing not to present evidence specific to his case, but to present and review studies and data regarding the comparative functioning of six-person and twelve-person juries. Mr. Gonzalez argues on appeal that a review of those studies and data entails a level of fact-finding that must be performed by the trial court.
Certain facial challenges to the constitutionality of a particular statute or rule of law permit, and may even require, a level of fact-finding at the trial court level. See, e.g., Sims v. State, 754 So.2d 657, 666-68 (Fla.2000) (examining whether lethal injection violates the Eighth Amendment prohibition against cruel and unusual punishment in light of evidence presented to the trial court regarding the protocol used and expert testimony on the possible or practical effects of the protocol); Provenzano v. Moore, 744 So.2d 413 (Fla.1999) (performing a similar analysis regarding the constitutionality of the use of the electric chair); Cox v. Fla. Dep't of Health & Rehabilitative Servs., 656 So.2d 902, 903 (Fla.1995) (requiring additional proceedings in a case challenging the constitutional validity of a statute banning homosexual *80 adoption because "a more complete record is necessary" to determine whether the statute met the rational basis test required by the equal protection analysis); see also Glendale Fed. Sav. & Loan Ass'n v. State, Dep't of Ins., 485 So.2d 1321, 1324 (Fla. 1st DCA 1986) (stating that "the question of the constitutionality of a statute is an issue of law, or of mixed fact and law, depending upon the nature of the statute brought into question and the scope of its threatened operation").
Certainly, in this case, sifting through varied and potentially conflicting scientific and sociological studies and scholarship to assess the constitutionality of a six-person jury entails a level of fact-finding. Asking an appellate court to perform this task raises concerns similar to those presented in asking appellate courts to review de novo a trial court determination on the reliability of certain scientific evidence. See, e.g., Brim v. State, 779 So.2d 427, 428-30 (Fla. 2d DCA 2000). Nevertheless, the use of empirical data and review of scholarship or studies to assess the constitutionality of certain practices is often left to the appellate court. See, e.g., Shawn Kolitch, Comment, Constitutional Fact Finding and the Appropriate Use of Empirical Data in Constitutional Law, 10 Lewis & Clark L. Rev. 673 (Fall 2006).
Existing United States Supreme Court precedent on this issue has not called for evidentiary hearings to review the scholarship or empirical data regarding the comparative functioning of juries of different sizes. Rather, the Court has reviewed the empirical data itself by way of published studies and articles. See Kolitch, 10 Lewis & Clark L. Rev. at 689-96 (reviewing the Supreme Court's use of empirical evidence in cases addressing the constitutionality of juries based upon size). Given that the Supreme Court has not generally required findings of fact by a lower tribunal for this type of analysis, and given that the circuit court was bound by the holding of Williams, we agree that no evidentiary hearing was required to address Mr. Gonzalez's motion.

B. The History of the Six-Person Jury in Florida.
Since 1875, the Florida Constitution has allowed the number of jurors to be "fixed by law." See art. 6, § 12, Fla. Const. (1875). The law first "fixed" the number of jurors at twelve for capital cases and six for "all other offenses" in 1877. See ch. 2041, Laws of Fla. (1877).[3]See generally Fla. Fertilizer & Mfg. Co. v. Boswell, 45 Fla. 301, 34 So. 241 (1903). Article 5, section 38, of the 1885 Florida Constitution then recognized that the number could be no less than six. Article I, section 22, of the Florida Constitution now provides, "The right of trial by jury shall be secure to all and remain inviolate. The *81 qualifications and the number of jurors, not fewer than six, shall be fixed by law."
Section 913.10, Florida Statutes (2006), is the current law that "fixes" the number of jurors: "Twelve persons shall constitute a jury to try all capital cases, and six persons shall constitute a jury to try all other criminal cases." See also Fla. R.Crim. P. 3.270 (stating the identical premise). The Florida Supreme Court has held that an offense is a "capital case" under the statute if it is "one where death is a possible penalty." State v. Hogan, 451 So.2d 844, 845 (Fla.1984). But see State v. Griffith, 561 So.2d 528, 529 (Fla.1990) (holding that a defendant charged with first-degree murder has a statutory right to trial by a twelve-person jury, even if the prosecutor agrees to waive possible application of the death penalty). There is no question, therefore, that Florida law permits, and perhaps even requires, a six-person jury in all felony cases for which death is not a possible penalty. Pursuant to Hogan, this includes "capital sexual battery" cases that might result in a mandatory life sentence but can no longer result in a death sentence. Hogan, 451 So.2d at 845.

C. The Constitutionality of the Six-Person Jury Under the Federal Constitution.
Florida's long-standing practice of permitting six-person juries to try felony criminal cases was challenged in Williams, 399 U.S. 78, 90 S.Ct. 1893. The defendant in Williams argued that his conviction for robbery by a jury of six violated his Sixth Amendment right to trial by jury under the United States Constitution.[4] The United States Supreme Court rejected this argument, holding "that the 12-man panel is not a necessary ingredient of `trial by jury,' and that [the] refusal to impanel more than the six members provided for by Florida law did not violate [Williams'] Sixth Amendment rights as applied to the States through the Fourteenth [Amendment]." Id. at 86, 90 S.Ct. 1893.
In determining that the constitution did not require a jury of twelve, the Court characterized the common-law number of twelve jurors as a "historical accident," id. at 89, 90 S.Ct. 1893, and not "the prevailing grundzahl," id. at 87 n. 19, 90 S.Ct. 1893. The Court acknowledged that the word "jury" may have imported to the Framers or the First Congress an "usual expectation" of twelve members, but the Court found no historical indication of an "explicit decision" to equate the use of the word "jury" in the constitution to the common-law characteristics of the jury. Id. at 98-99, 90 S.Ct. 1893. As a result, the Court concluded that the Sixth Amendment itself could not be interpreted as requiring twelve-person juries. Rather, the Court explained, "The relevant inquiry, as we see it, must be the function that the particular feature [of the jury] performs and its relation to the purposes of the jury trial." Id. at 99-100, 90 S.Ct. 1893. The Court thus proceeded to examine the functions of the jury and the ability of a specific number of jurors to accomplish those functions.
The Court characterized the jury's function as "interposi[ng] between the accused and his accuser [ ] the commonsense judgment of a group of laymen," and in fostering "the community participation and shared responsibility that results from that group's determination of guilt or innocence." Id. at 100, 90 S.Ct. 1893. Viewed in this light, the Court essentially concluded that size doesn't matter. Id. at 100-01, 90 S.Ct. 1893 (stating, "[t]he reliability of *82 the jury as a factfinder hardly seems likely to be a function of its size"). The Court noted, "To be sure, the number should probably be large enough to promote group deliberation, free from outside attempts at intimidation, and to provide a fair possibility for obtaining a representative cross-section of the community." Id. at 100, 90 S.Ct. 1893. Nevertheless, the Court found that "neither currently available evidence nor theory suggests that the 12-man jury is necessarily more advantageous to the defendant than a jury composed of fewer numbers." Id. at 101, 90 S.Ct. 1893. See also Colgrove v. Battin, 413 U.S. 149, 93 S.Ct. 2448, 37 L.Ed.2d 522 (1973) (applying a similar analysis to conclude that a six-person jury satisfies the Seventh Amendment right to a jury trial in civil cases).
The decision in Williams brought the issue of the effects of a jury's size on its functioning into the forefront and raised an ensuing scholarly debate. In part, that debate convinced the Court just eight years later that a jury reduced to the size of five for misdemeanor cases was unconstitutional under the Sixth Amendment. In Ballew, 435 U.S. 223, 98 S.Ct. 1029 the Court stated:
While we adhere to, and reaffirm our holding in Williams v. Florida, these studies, most of which have been made since Williams was decided in 1970, lead us to conclude that the purpose and functioning of the jury in a criminal trial is seriously impaired, and to a constitutional degree, by a reduction in size to below six members. We readily admit that we do not pretend to discern a clear line between six members and five. But the assembled data raise substantial doubt about the reliability and appropriate representation of panels smaller than six.
Ballew, 435 U.S. at 239, 98 S.Ct. 1029.

D. The Argument that Circumstances have Changed Since Williams.

Throughout history, there is little question that many societies and cultures have relied on groups of twelve to make reliable decisions. Whether reliance on such duodecuple decision-making has only been based on a religious or cultural tradition of twelve or on some intuitive sense that a group of twelve is reliable is probably an unanswerable question.[5] However, within the law, we quite reasonably give trust to solutions that have withstood the test of time, and the jury of twelve has clearly withstood that test.
Mr. Gonzalez is not alone in arguing that advances in the understanding of small group decision-making and trends in the law of other states support another examination of the Williams rationale. In 1995, the Committee on the Rules of Practice and Procedure of the Judicial Conference of the United States proposed that the Federal Rules of Civil Procedure be amended to require twelve-person juries in civil cases. See Proposed Amendments to the Federal Rules of Appellate, Bankruptcy, Civil, Criminal Procedure and Evidence, 163 F.R.D. 91 (transmitted by the Committee on the Rules of Practice and Procedure of the Judicial Conference of the United States for Notice and Comment, September 1995).[6] The text of the *83 proposed committee note to follow the proposed amended rule explained:
Much has been learned since 1973 about the advantages of twelve-member juries. Twelve-member juries substantially increase the representative quality of most juries, greatly improving the probability that most juries will include members of minority groups. The sociological and psychological dynamics of jury deliberation also are strongly influenced by jury size. Members of a twelve-person jury are less easily dominated by an aggressive juror, better able to recall the evidence, more likely to rise above the biases and prejudices of individual members, and enriched by a broader base of community experience. The wisdom enshrined in the twelve-member tradition is increasingly demonstrated by contemporary social science.
Id. at 147.
On February 14, 2005, the American Bar Association House of Delegates approved Principles for Juries and Jury Trials, a document prepared by the American Jury Project after an October 2004 symposium. Principle 3 is entitled "Juries Should Have Twelve Members" and calls for twelve-person juries in any criminal case that might result in a penalty of confinement of over six months. Moreover, as mentioned at the beginning of this opinion, Florida is one of only two states that now consistently allow serious felony cases to be decided by juries with as few as six members. See David B. Rottman & Shauna M. Strickland, State Court Organization 2004, United States Department of Justice, Bureau of Justice Statistics, Table 42 at 233, available at http://www.ojp.usdoj.gov/bjs/abstract/sco04.htm (last visited Mar. 18, 2008).
The extensive development in the study of small group decision-making since 1970 is well beyond the scope of this opinion. There clearly is more scientific evidence today than in 1970 that a twelve-person jury may be superior to a six-person jury to accomplish the functions, purposes, and goals identified by the Williams court. Ensuing scholarship has criticized the empirical authorities upon which the Williams court relied, see Robert H. Miller, Comment, Six of One Is Not a Dozen of the Other: A Re-Examination of Williams v. Florida and the Size of State Criminal Juries, 146 U. Pa. L. Rev. 621, 652 (Jan. 1998), and collected more empirical studies that contradict the conclusions of the Court, see, e.g., Michael Saks & Mollie Weighner Marti, A Meta-Analysis of the Effects of Jury Size, 21 L. & Hum. Behav. 451 (1997). The scholarship and evidence in this regard, however, are not undisputed, and the various scientific theories are not necessarily cohesive.
In Mr. Miller's article, Six of One is Not a Dozen of the Other: A Re-examination of Williams v. Florida and the Size of State Criminal Juries, the author concludes:
As the Ballew Court admitted, we now know that six- and twelve-person juries are not functionally equivalent, as the Williams Court assumed. We know that recall of facts, testimony, and in-court observations are compromised significantly when a six-person jury is used in place of a twelve-person jury. We know that the rate of hung juries declines and the rate of conviction rises when smaller juries are used. We know *84 that minority representation, community representativeness, and quality of deliberation all decrease when six-person juries are used. Finally, we know that six-person juries are less reliable than twelve-person juries, because they are less consistent in rulings on similar cases and because they decide all cases at greater variance from larger community preferences.
146 U. Pa. L. Rev. at 682-83 (footnotes omitted).[7]
Adam M. Chud and Michael L. Berman, however, have expressed disagreement with the conclusion that twelve-person juries are, a priori, superior to six-person juries, in their article, Six-Member Juries: Does Size Really Matter?, 67 Tenn. L. Rev. 743, 762 (2000). They write, "Although small and large juries produce distinctive group dynamics, ultimately both six- and twelve-member juries reach results with which the legal system should be comfortable." Their review of empirical data convinces them that "both small and large juries have their benefits and their drawbacks":
Six-member juries are less likely than twelve-member juries to contain a minority perspective; however, juries of twelve members also pose a significant chance of including no minority voices. Moreover, some members of large juries may be intimidated into going along with group consensus to avoid social isolation.
Id. at 763.
There is also no doubt that the cost of increasing the size of juries in any subset of cases must also play a role in any analysis. See, e.g., Proposed Amendments to the Federal Rules of Appellate, Bankruptcy, Civil, Criminal Procedure and Evidence, 163 F.R.D. at 137-38 (contemplating possible costs of requiring increased jury size).
These developments must also be reviewed in the context of an increased recognition of the jury's central role in our judicial system, as reflected in recent Supreme Court precedent. In recent years, the Supreme Court has placed greater emphasis upon the jury as a critical participant in deciding factual issues that have an impact upon a defendant's sentence. For example, in Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), in holding that a jury must decide any fact that increases the penalty for a crime beyond that statutory maximum, other than the fact of a prior conviction, the Court stated:
As we have, unanimously, explained . . . the historical foundation for our recognition of these principles extends down centuries into the common law. "[T]o guard against a spirit of oppression and tyranny on the part of rulers," and "as the great bulwark of [our] civil and political liberties," 2 J. Story, Commentaries on the Constitution of the United States 540-541 (4th ed. 1873), trial by jury has been understood to require that "the truth of every accusation, whether preferred in the shape of *85 indictment, information, or appeal, should afterwards be confirmed by the unanimous suffrage of twelve of [the defendant's] equals and neighbours. . . ." 4 W. Blackstone, Commentaries on the Laws of England 343 (1769) (hereinafter Blackstone) (emphasis added). See also Duncan v. Louisiana, 391 U.S. 145, 151-154, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).
Id. at 477, 120 S.Ct. 2348.
In Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), in applying Apprendi and clarifying the definition of the "statutory maximum" for any offense, the Court repeated its reference to the "suffrage of twelve," id. at 301, 124 S.Ct. 2531, and then re-emphasized the critical nature of trial by jury:
Our commitment to Apprendi in this context reflects not just respect for longstanding precedent, but the need to give intelligible content to the right of jury trial. That right is no mere procedural formality, but a fundamental reservation of power in our constitutional structure. Just as suffrage ensures the people's ultimate control in the legislative and executive branches, jury trial is meant to ensure their control in the judiciary. See Letter XV by the Federal Farmer (Jan. 18, 1788), reprinted in 2 The Complete Anti-Federalist 315, 320 (H. Storing ed.1981) (describing the jury as "secur[ing] to the people at large, their just and rightful controul in the judicial department"); John Adams, Diary Entry (Feb. 12, 1771), reprinted in 2 Works of John Adams 252, 253 (C. Adams ed. 1850) ("[T]he common people, should have as complete a control . . . in every judgment of a court of judicature" as in the legislature); Letter from Thomas Jefferson to the Abbe Arnoux (July 19, 1789), reprinted in 15 Papers of Thomas Jefferson 282, 283 (J. Boyd ed. 1958) ("Were I called upon to decide whether the people had best be omitted in the Legislative or Judiciary department, I would say it is better to leave them out of the Legislative"); Jones v. United States, 526 U.S. 227, 244-248, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). Apprendi carries out this design by ensuring that the judge's authority to sentence derives wholly from the jury's verdict. Without that restriction, the jury would not exercise the control that the Framers intended.
Id. at 305-06, 124 S.Ct. 2531.
At the same time that the Supreme Court has been recognizing the jury's critical role in deciding all facts that may increase the penalty for a crime, the Florida Legislature has been removing some of the discretion that trial judges had under the common law to adjust a sentence to fit the specific circumstances of the case. As exemplified by this case, prison releasee reoffenders, violent career criminals, habitual felony offenders, and persons who use weapons to commit crimes are now often mandated by statute to serve lengthy sentences. See §§ 775.082, .084, .087, Fla. Stat. (2007). In Mr. Gonzalez's case, the mandated sentence is life imprisonment with no provision for parole. See § 775.082(9)(a)(1), (3)(a).
If juries are to be the sole decisionmakers on sentences of this severity, there clearly are reasonable people in addition to Mr. Gonzalez who at least intuitively believe that our system would make better, more legitimate decisions, based on the voices of a better cross-section of our community, if we trusted the jury of twelve that Blackstone trusted. Apprendi, 530 U.S. at 477-480, 120 S.Ct. 2348.
As persuasive as Mr. Gonzalez's argument may be, this court is bound by existing Supreme Court precedent to hold that the six-person jury that convicted him was *86 not, by sheer virtue of its size, constitutionally deficient. That argument must be made ultimately to the Supreme Court.

IV. FLORIDA LAW AND THE SIX-PERSON JURY
Whether a six-person jury meets the minimum standard necessary under the federal constitution is a different question than whether such a jury is desirable in our system of justice to decide cases where the defendant faces mandatory life imprisonment. The continued concerns regarding juries with as few as six members merits debate within this state as to whether this long-standing practicea practice at direct odds with the common law and the practice in the majority of jurisdictionsremains defensible in a time when there is little difficulty gathering a jury of twelve to consider cases in which a defendant faces such a severe sentence. Recent Florida cases have specifically questioned the continued use of six-person juries in sexual battery cases where the evidence may be tenuous and the resulting punishment life imprisonment. See, e.g., Adaway v. State, 902 So.2d 746, 755 (Fla. 2005) (Pariente, J., concurring); Palazzolo v. State, 754 So.2d 731, 737 (Fla. 2d DCA 2000).[8]
Although Mr. Gonzalez is entitled to no remedy from this court, his claim could arguably be addressed in Florida without regard to the minimum requirements of the United States Constitution. Notably, Mr. Gonzalez is not only entitled to a jury of no fewer than six, but also to an "impartial jury" under article 1, section 16, of the Florida Constitution. Consistent with the primacy of state constitutions announced in Traylor v. State, 596 So.2d 957 (Fla. 1992), the Florida Supreme Court could hold that although the minimum of six jurors in article I, section 22, is appropriate for civil and most criminal cases, a jury of six for the most serious offenses is a deprivation of the impartial jury required under section 16. Obviously, the Florida Legislature could address this issue prospectively by amending section 913.10 to fix the number of jurors for use in serious felony cases at a number in line with the number provided by the great majority of other states. That statutory change would then permit the Florida Supreme Court to amend rule 3.270 to require jurors of twelve in serious felony cases.
At this time, neither Florida nor federal law provides any relief for Mr. Gonzalez. We therefore affirm the judgment and sentence.
SALCINES and VILLANTI, JJ., Concur.
NOTES
[1] Our discussion of this issue has been greatly facilitated by the high quality of the briefs submitted by both parties, which explored in depth not only the relevant case law but also the scholarship existing in this area.
[2] The other state is Connecticut. Indiana and Massachusetts allow some felony cases to be tried by juries as small as six members but still require twelve-person juries for more serious felonies. See David B. Rottman & Shauna M. Strickland, State Court Organization 2004, United States Department of Justice, Bureau of Justice Statistics, Table 42 at 233-36, available at http://www.ojp.usdoj.gov/bjs/abstract/sco04.htm (last visited Mar. 18, 2008). Notably, Connecticut continues to permit parole for most offenders, with the exception of those convicted of capital felonies, felony murder, arson murder, murder, or aggravated sexual assault. See Conn. Gen. Stat. Ann. § 54-125a (West 2008) (as recently amended by 2008 Conn. Legis. Serv.Jan. Sp. Sess. P.A. 08-1 (SB 1700) (West)).
[3] We have found no historical explanation as to why the State of Florida in the late 1800s fixed the minimum number of jurors at a number that was half of that traditionally required at common law. However, at that time Florida had a sparse population, especially in the large southern counties. See Atlas of Florida, 996 (Edward A. Fernald & Elizabeth D. Purdum, eds., Univ. Press of Fla. 1992) (demonstrating that large southern counties of Florida in 1860 had average populations of 2.1 persons per square mile or less, and in 1880 had average populations of 3.5 persons per square mile or less). Notably, at that time juries did not include women and often excluded minorities. Moreover, the difficulty of traveling long distances in rural counties and the limited availability of lodging for jurors may well have made it impractical or even impossible to regularly use a jury of twelve white males in some Florida counties in the late 1800s. The legislature, however, never revised the number of jurors for use in serious criminal cases after counties became smaller, the state's population vastly increased, and jury duty was expanded to include all adults, without regard to race or gender, who possessed a driver's license.
[4] Notably, Mr. Williams was sentenced to life for this crime, but at a time when this sentence would have made him eligible for parole. See, e.g., § 947.16, Fla. Stat. (1969).
[5] As noted by Wikipedia in its entry regarding the number twelve, the number is represented in the Twelve Olympian Gods from Roman times, the Twelve Tribes of Israel in the Judaic tradition, the Twelve Apostles in the Christian tradition, and the Twelve Imams in Shi'a Islam. See 12 (number), Wikipedia, available at http://en.wikipedia.org/wiki/12_(number) (last visited Mar. 24, 2008).
[6] Federal Rule of Civil Procedure 48 currently requires that a civil jury must initially have at least six and no more than twelve members. Federal Rule of Criminal Procedure 23(b)(1) requires a jury of twelve absent a stipulation by the parties to the contrary or a court order permitting a verdict by a jury of eleven if the court found good cause to excuse a juror.
[7] John H. Wigmore, in A Program for the Trial of Jury Trial, 12 J. Am. Jud. Soc'y 166, 169-71 (1929), writes:

Ask any twelve intelligent friends any question of opinion or fact, calling for serious thought. . . . Will it ever happen that you do not glean from at least two or three of the twelve some argument or detail or judgment that the others . . . had failed to mention?
. . . [T]he conduct of human life has to be based on elusive averages or generalities, whether in politics, law, medicine, engineering, commerce or ethics. And when it comes to applying these generalities to concrete cases, the only safe machinery, that is dependable in the long run, is a machinery that embodies an average judgment, i.e., the reconciliation of several judgments taken at random.
[8] Adaway and Palazzolo both involved charges of capital sexual battery. In Hogan, 451 So.2d 844, the Florida Supreme Court held that this crime remained a "capital" offense for determining the maximum sentence for an offense, but not for determining the number of jurors assigned to the case. In this narrow context, it appears twelve-person juries could be required if the Florida Supreme Court receded from that portion of Hogan determining that the unavailability of the death penalty determined the crime was not a capital crime for the purposes of jury size, and instead adopted reasoning similar to that used in Griffith, 561 So.2d at 529, to hold that a twelve-member jury was required in a first-degree murder case even if the prosecutor waives the possible application of the death penalty. This result, however, would not assist Mr. Gonzalez.