IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

TROY LESSARD,

      Appellant,

v.

STATE OF FLORIDA,

      Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D15-5300

Opinion filed December 13, 2017.

An appeal from the Circuit Court for Suwannee County.
David W. Fina, Judge.

Andy Thomas, Public Defender, and Courtenay H. Miller, Assistant Public
Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, and Robert Quentin Humphrey, Assistant
Attorney General, Tallahassee, for Appellee.

PER CURIAM.

      AFFIRMED.

ROBERTS and JAY, JJ., CONCUR; MAKAR CONCURS with opinion.

MAKAR, J. concurring.

I concur in affirming Troy Roland Lessard's convictions on counts of capital sexual battery and lewd or lascivious molestation, for which he received life sentences, but write to address his claim—raised for the first time on appeal—that the decision in Williams v. Florida, 399 U.S. 78 (1970), which upheld Florida's use of six-member juries in all non-death penalty criminal cases, was wrongly decided and should be reconsidered to afford him a retrial before a twelve-member jury. Florida is the only state that requires six-member juries in life-felony cases, such as this one, and the empirical studies continue to discredit the Williams decision, but the relief Lessard seeks is a jurisprudential dark horse.

To begin, it is obvious that Williams, which dismissed the centuries-old common law practice of twelve-member juries[1] as a mere "historical accident"[2]

---

[1] See, e.g., Barbara Luppi & Francesco Parisi, Jury Size and the Hung-Jury Paradox, 42 J. Legal Stud. 399 (2013). The authors note that:

> The 12-person jury is a timeworn institution; a staple of novels, stage, and cinema; and well established in the common-law tradition, the historical tendrils of which extend from the medieval courts of England. From as far back as the twelfth century, trials were decided by juries of 12, a number that by the fourteenth century had become so firmly cemented in the legal tradition that it subsequently acquired near mystical significance. The 12-person jury later made its way to the American colonies and persisted after the Revolution as a constitutional right in the United States.

and replaced it with an ad hoc "functional" approach, was based on dubious

anecdotal assertions and demonstrably incorrect statistical and sociological

Id. at 399-400. See also Apprendi v. New Jersey, 530 U.S. 466, 477 (2000) (noting that the "historical foundation" for jury trial principles "extends down centuries into the common law" such that "trial by jury has been understood to require that '*the truth of every accusation*, whether preferred in the shape of indictment, information, or appeal, should afterwards be confirmed by the unanimous suffrage of **twelve** of [the defendant's] equals and neighbours....' 4 W. Blackstone, Commentaries on the Laws of England 343 (1769)[.]") (italics in original opinion; bold emphasis added) (internal citations omitted); see also Blakely v. Washington, 542 U.S. 296, 301 (2004) (noting "that the 'truth of every accusation' against a defendant 'should afterwards be confirmed by the unanimous suffrage of **twelve** of his equals and neighbours[]'" as a "longstanding tenet[] of common-law criminal jurisprudence") (citing Blackstone) (emphasis added); see also Baldwin v. New York, 399 U.S. 117, 122 (1970) (Harlan, J., dissenting) ("With all respect, I consider that before today it would have been unthinkable to suggest that the Sixth Amendment's right to a trial by jury is satisfied by a jury of six, or less, as is left open by the Court's opinion in Williams, or by less than a unanimous verdict, a question also reserved in today's decision."). The 1954 screenplay *Twelve Angry Men*—much like the oft-repeated *Miranda* warnings in movies and television shows—has fixed twelve as having special historic significance in popular culture.

[2] Williams, 399 U.S. at 90-91. The Court held in Duncan v. Louisiana, 391 U.S. 145, 148-49 (1968), that the right to jury trial in the Sixth Amendment is a "fundamental" right that applies to the States via the Due Process Clause of the Fourteenth Amendment. In dissent, Justice Harlan bemoaned that the "circumvention of history is compounded by the cavalier disregard of numerous pronouncements of this Court that reflect the understanding of the jury as one of 12 members and have fixed expectations accordingly." Baldwin, 399 U.S. at 126 (Harlan, J., dissenting).

3

principles that have plagued this body of jurisprudence ever since.[3] Williams held

that a six-member jury in a state court criminal proceeding was functionally the

same and thereby an adequate constitutional proxy for the time-worn traditional

twelve-member jury.[4] But its reasoning foundered on glaring misinterpretations of

social science research and inept methodologies, so much so that one prominent

commentator said that the "quality of social science scholarship displayed [in the

---

[3] See Shawn Kolitch, Constitutional Fact Finding and the Appropriate Use of Empirical Data in Constitutional Law, 10 Lewis & Clark L. Rev. 673, 689 (2006) (noting that the Supreme Court's newfound functional approach was flawed because its "interpretation of the available empirical data was questionable from the beginning, and illustrates many of the difficulties the Court faces when attempting to support its holdings with empirical data"); Robert H. Miller, Six of One Is Not A Dozen of the Other: A Reexamination of Williams v. Florida and the Size of State Criminal Juries, 146 U. Pa. L. Rev. 621, 622 (1998) (discussing "the critical ways in which the Court's misinterpretation and misapplication of social-science research in Williams and its progeny triggered the 'unthinkable' dismantling of an irrevocable constitutional cornerstone") (footnote omitted); Baldwin, 399 U.S. at 126 ("The Court's elaboration of what is required provides no standard and vexes the meaning of the right to a jury trial in federal courts, as well as state courts, by uncertainty. Can it be doubted that a unanimous jury of 12 provides a greater safeguard than a majority vote of six? The uncertainty that will henceforth plague the meaning of trial by jury is itself a further sufficient reason for not hoisting the anchor to history.") (Harlan, J., dissenting).

[4] Under the Florida constitution, the "qualifications and the number of jurors, not fewer than six, shall be fixed by law." Art. I, § 22, Fla. Const. By statute, Florida specifies that "[t]welve persons shall constitute a jury to try all capital cases, and six persons shall constitute a jury to try all other criminal cases." § 913.10, Fla. Stat. (2017).

Court's decisions on jury size] would not win a passing grade in a high school psychology class."[5]

Soon thereafter, the Court again rejected historical norms in assessing the issue of jury unanimity in state court criminal proceedings. Much like its analysis in Williams, the Court concluded that jury unanimity is not required under the Sixth Amendment—at least when juries are ten or larger—because it "does not materially contribute to the exercise of [jurors'] commonsense judgment." Apodaca v. Oregon, 406 U.S. 404, 410 (1972). Applying a "functional" approach again, a plurality "perceive[d] no difference between juries required to act unanimously and those permitted to convict or acquit by votes of 10 to two or 11 to one" such that "the interest of the defendant in having the judgment of his peers interposed between himself and the officers of the State who prosecute and judge him is equally well served," whether unanimity is required or not. Id. at 410-11. The various opinions, concurring and dissenting, reflected no consensus on a coherent analytical approach. In a companion case, Johnson v. Louisiana, 406 U.S. 356, 364 (1972), the Court addressed a tiered jury system where "less serious crimes [are] tried by five jurors with unanimous verdicts, more serious crimes [ ]

_____

[5] Miller, Six of One Is Not A Dozen of the Other, 146 U. Pa. L. Rev. at 678 (1998) (quoting Michael J. Saks, Ignorance of Science Is No Excuse, 10 Trial, Nov.-Dec. 1974, at 18).

required the assent of nine of 12 jurors, and for the most serious crimes a unanimous verdict of 12 jurors is stipulated." In upholding a 9-3 verdict, the Court concluded that the differential jury system served a rational interest, the state legislature "obviously intend[ing] to vary the difficulty of proving guilt with the gravity of the offense and the severity of the punishment." Id. at 365.

Its jury size/unanimity jurisprudence in a muddle, the Supreme Court tried to temper the fallout from Williams by invalidating a five-member jury in Ballew v. Georgia, 435 U.S. 223 (1978), but even greater confusion ensued. Two justices (Blackmun and Stevens) posited that juries of less than six members substantially threatened the constitutional guarantee of the jury trial right, notwithstanding the cost-saving and time-saving arguments that Georgia advanced. Their analysis reflected that most of the major premises underlying the functional approach in Williams were inaccurate, but rather than overturn that decision, they side-stepped it.[6] Justice White asserted that the requirement that a jury be a fair cross-section of

_____

[6] Justice Blackmun's opinion found:

- "First, recent empirical data suggest that progressively smaller juries are less likely to foster effective group deliberation. At some point, this decline leads to inaccurate fact-finding and incorrect application of the common sense of the community to the facts. Generally, a positive correlation exists between group size and the quality of both group performance and group productivity."

6

the community would be violated with juries of less than six members. And three justices (Chief Justice Burger and Justices Powell and Rehnquist) agreed that a conviction for serious offenses by juries of five members "involves grave questions of fairness" and that "the line between five- and six- member juries is difficult to justify, but a line has to be drawn somewhere if the substance of jury trial is to be preserved." Id. at 245-46. Finally, three justices (Brennan, Stewart, and Marshall) concurred only in the holding that "the Sixth and Fourteenth Amendments require juries in criminal trials to contain more than five persons." Id. at 246. Though unified in striking down the Georgia law, no coherent framework emerged (again). And the Court, by acknowledging Williams's faulty foundation, allowed doubt in the legitimacy of its functional approach to continue.

- "Second, the data now raise doubts about the accuracy of the results achieved by smaller and smaller panels. Statistical studies suggest that the risk of convicting an innocent person (Type I error) rises as the size of the jury diminishes."
- "Third, the data suggest that the verdicts of jury deliberation in criminal cases will vary as juries become smaller, and that the variance amounts to an imbalance to the detriment of one side, the defense."
- "Fourth, what has just been said about the presence of minority viewpoint as juries decrease in size foretells problems not only for jury decisionmaking, but also for the representation of minority groups in the community."
- "Fifth, several authors have identified in jury research methodological problems tending to mask differences in the operation of smaller and larger juries" such that standard variances in smaller juries were greater.

Ballew, 435 U.S. at 232-39.

7

Indeed, the next year, in <u>Burch v. Louisiana</u>, 441 U.S. 130 (1979), the Court again noted the less-than-satisfactory nature of its functional approach, this time considering whether a conviction for a non-petty state offense by a non-unanimous six-person jury was constitutional. In overturning the conviction, the Court stated:

> As in *Ballew*, we do not pretend the ability to discern *a priori* a bright line below which the number of jurors participating in the trial or in the verdict would not permit the jury to function in the manner required by our prior cases. But having already departed from the strictly historical requirements of jury trial, it is inevitable that lines must be drawn somewhere if the substance of the jury trial right is to be preserved.

<u>Id.</u> at 137 (internal citations omitted). And thus the ad hoc line-drawing continued, most often based on the perception of whether judicial efficiencies were at the expense of a criminal defendant's right to a fair trial (Louisiana said, for example, that its smaller, non-unanimous juries shortened deliberation time and reduced the number of hung juries). As Judge Posner put it, "judicial economy is not a trivial goal in this era of massive caseloads; and the Supreme Court, in upholding the constitutionality of the six-person jury in criminal cases, has shown that it is receptive to innovations designed to reduce the high cost of jury trials." <u>Smith v. DeRobertis</u>, 758 F.2d 1151, 1151-52 (7th Cir. 1985) (citing <u>Williams</u>).

In <u>Burch</u>, the balance tipped in the defendant's favor because when "a State has reduced the size of its juries to the minimum number of jurors permitted by the

Constitution, the additional authorization of nonunanimous verdicts by such juries sufficiently threatens the constitutional principles that led to the establishment of the size threshold that any countervailing interest of the State should yield." 441 U.S. at 139. Another line was thereby drawn.

Despite repeated calls to either abandon its functional approach (and revert to the historical twelve juror standard)[7] or at least update it by bringing it in line with modern empirical realities (some studies suggest optimal jury sizes based on multi-variate statistical models), little has changed jurisprudentially in the Supreme Court since Williams and Ballew. Part of the reason is that "[a]lthough the Supreme Court has blessed both six-person juries and non-unanimous decision rules, measured on a national scale, neither decision has had great impact. The vast majority of states still choose twelve-person, unanimous juries to convict in serious criminal cases."[8] Forty-five states require twelve unanimous jurors to convict for

---

[7] See, e.g., Randolph N. Jonakait, Originalism As the Defense Attorney's Friend: Expanding Sixth Amendment Rights, Champion, May 2009, at 38, 40 (discussing that principles of originalism create a basis for a constitutional challenge to revert to the historic standard of a twelve-member jury).

[8] Joan L. Larsen, Ancient Juries and Modern Judges: Originalism's Uneasy Relationship with the Jury, 71 Ohio St. L.J. 959, 1000-01 (2010) (footnotes omitted) (noting that "[j]uries, in the American imagination, broadly defined, are still twelve and decide unanimously. Dollars and cents calculations or more traditional reliance interests in those states that have gone a different way may still

any felony (federal felony trials require twelve jurors); a few states permit six to eight jurors for specified felonies.[9]

Florida and Connecticut are the anomalies.[10] As the Second District noted: "Florida is one of only two remaining states that regularly use six jurors to decide

_____

persuade the Court that its cases should stand, but nothing outside of formal doctrine—no constitutional expectation—stands as an obstacle to their demise.").

[9] Two professors, who advocate for either a return to the historic jury size of twelve or a conscientious, updated application of the functional approach, surveyed state jury size as follows:

> Although some states reduced the size of the jury in criminal prosecutions to six persons (and Georgia attempted to reduce the size to five) following the Williams decision, most states currently retain twelve-person juries in felony cases. Only six states permit juries of fewer than twelve in felony prosecutions, and of those only four permit six-person juries. Indiana requires twelve-person juries for class A, B, and C felonies, and six-person juries in all other felony cases. Massachusetts provides twelve-person juries for all Superior Court cases and a de novo jury trial for all cases appealed from a guilty verdict by a six-person jury in district court cases. Thus no person accused of a felony in Massachusetts must settle for a six-person jury. Arizona provides twelve-person juries in cases where the sentence may be more than thirty years and eight-person juries in other felony cases. In Utah, eight-person juries are permitted in felony prosecutions.

Alisa Smith & Michael J. Saks, The Case for Overturning Williams v. Florida and the Six-Person Jury: History, Law, and Empirical Evidence, 60 Fla. L. Rev. 441, 443 (2008) (footnotes omitted).

the outcome of criminal cases in which life imprisonment is a mandatory sentence if the defendant is found guilty of the charged offense." Gonzalez v. State, 982 So. 2d 77, 78 (Fla. 2d DCA 2008) (footnote omitted) (noting that "[t]he common-law tradition of twelve jurors for such important criminal cases is overwhelmingly recognized as the better policy throughout the United States"); see also Alisa Smith & Michael J. Saks, The Case for Overturning Williams v. Florida and the Six-Person Jury: History, Law, and Empirical Evidence, 60 Fla. L. Rev. 441, 443 (2008) ("The only other state [besides Florida] with six-person juries in felony cases is Connecticut. All other state and federal felony prosecutions require twelve-person juries. The states that have the death penalty, including Florida, require twelve-person juries in all capital or death cases.").

Connecticut, though requiring six-member juries, provides that no person accused of an offense punishable by "life imprisonment without the possibility of release or life imprisonment, shall be tried by a jury of less than twelve without such person's consent." Conn. Gen. Stat. Ann. § 54-82 (2017) (amended in 2012). That leaves Florida with the distinction of being the only state that requires six-

---

[10] Id. (The only other state with six-person juries in felony cases is Connecticut. All other state and federal felony prosecutions require twelve-person juries. The states that have the death penalty, including Florida, require twelve-person juries in all capital or death cases.).

member juries for non-capital crimes punishable by life imprisonment, which is the sentence that Lessard received on the capital sexual battery count (life in prison without parole) and the lewd and lascivious molestation of a minor count (life in prison with a minimum mandatory of twenty-five years).

Though Florida is alone in using six-member juries for life felonies, Lessard's demand for a twelve-member jury for the serious charges against him is a non-starter. No federal constitutional impediment stands in the way of a six-person jury in a state criminal court. And our state supreme court, as well as the district courts, have uniformly rejected a claimed constitutional right to a twelve-member jury in similar situations; certain capital offenses, for which only a life sentence is now permissible rather than death, require only a six-member jury. State v. Hogan, 451 So. 2d 844, 845-46 (Fla. 1984) ("Sexual battery of a child, therefore, while still defined as a 'capital' crime by the legislature, is not capital in the sense that a defendant might be put to death" such that "a twelve-person jury is not required when a person is tried under that statute.").[11]

_____

[11] Lessard asserts that the Florida Supreme Court in Hogan violated separation of powers principles by negating the statutory twelve-member jury requirement in capital cases, urging that the Court "as presently constituted" ought to revisit the issue. As to the capital sexual battery count, he argues:

12

As Judge Altenbernd's scholarly opinion noted almost a decade ago, an argument in favor of twelve-member juries for felonies involving mandatory life sentences without parole "is worthy of consideration, but this court has no authority to overrule the precedent from the United States Supreme Court that endorsed the use of a jury with only six members as constitutional, nor the Florida law that authorizes and perhaps compels the use of six-member juries in non-capital criminal cases." Gonzalez, 982 So. 2d at 78. Instead, jury size is now principally a legislative branch question, one that Florida's

> In light of special rules of evidence authorizing admission of hearsay and collateral-crime evidence in molestation cases, precedent excusing such cases from requirements that the date of offense be alleged with specificity, and society's revulsion at child molestation, the Legislature may have wished to maintain a protective counterweight in the form of a twelve-person jury in prosecutions for molestation compelling a life sentence.

Lessard asks that we certify a question ("Should the court recede from its holding in State v. Hogan, 451 So. 2d 844 (Fla. 1984), that Florida law does not compel a twelve-person in a trial for 'capital' sexual battery?"), but a similar question was certified by this Court in 2003 and rejected, see Hall v. State, 853 So. 2d 546, 549 (Fla. 1st DCA 2003) ("Whether a 12–person jury is required in a first degree murder case where the death penalty may not be imposed as a matter of law."), rev. denied, 865 So. 2d 480 (Fla. 2003), making certification now less compelling. Lessard points to the recent empirical work on jury size as a basis for certification, but the Florida Supreme Court would be in no better position to evaluate those studies or do its own empirical work than would the Florida Legislature, which has been considering jury size as to life felonies in recent years. Whether the U.S. Supreme Court might delve into such empirical matters is a different question.

13

legislature continues to debate.[12] Beyond that, the future of jury size jurisprudence lies in the United States Supreme Court, which could update its functional approach based on contemporary social science research, abandon <u>Williams</u> and return to the originalist position of twelve-member juries, or—like it has done for four decades—leave it be.[13]

---

[12] <u>See, e.g.</u>, 2017 Florida Senate Bill No. 962, (proposing change to section 913.10, Florida Statutes, to say: "Number of jurors.-Twelve persons shall constitute a jury to try all capital <u>and life felony</u> cases, and six persons shall constitute a jury to try all other criminal cases."). Since 2014, at least one bill has been proposed to make this type of change to the statute.

[13] The Court has turned down petitions in 13-1179, <u>Irving v. Florida</u>; 08-6833, <u>Gonzalez v. Florida</u>; and 08-6868, <u>Deltoro v. Florida</u>.