DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JOSE LUIS GUZMAN,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D22-0148

[October 26, 2022]

Appeal from the Circuit Court for the 19th Judicial Circuit, St. Lucie County; Lawrence M. Mirman, Judge; L.T. Case No. 562018CF001673A.

Carey Haughwout, Public Defender, and Paul Edward Petillo, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Melynda L. Melear, Senior Assistant Attorney General, West Palm Beach, for appellee.

PER CURIAM.

Jose Guzman appeals his convictions and life sentences for three counts of sexual battery on a child under 12 years old and three counts of lewd or lascivious molestation on a child under 12 years old. We affirm the convictions and sentences.

For the first time on appeal, Guzman argues that his convictions by a six-person jury violated the Sixth and Fourteenth Amendments to the United States Constitution. In support of this claim, Guzman relies upon the reasoning of *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020).

Assuming for the sake of argument that we may consider this issue despite Guzman's failure to raise it below, the Supreme Court held in *Williams v. Florida*, 399 U.S. 78 (1970), that six-person juries were constitutionally permissible. The Supreme Court has not revisited its express holding in *Williams*. That Court "does not normally overturn . . . earlier authority *sub silentio*." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000).

Like the Arizona Court of Appeals, we "cannot conclude the Supreme Court silently changed a fundamental feature of its Sixth Amendment jurisprudence." *State v. Khorrami*, No. 1 CA-CR 20-0088, 2021 WL 3197499, at *8 (Ariz. Ct. App. July 29, 2021), *cert. petition pending*, No. 21-1553. We have "no authority to overrule the precedent from the United States Supreme Court that endorsed the use of a jury with only six members as constitutional[.]" *Gonzalez v. State*, 982 So. 2d 77, 78 (Fla. 2d DCA 2008).

Guzman also argues that he is entitled to a new sentencing hearing on the counts for lewd and lascivious molestation because he was a first-time felony offender, and the trial court sentenced him above the statutory minimum on those counts without ordering a presentence investigation ("PSI"). Guzman raised this issue below in a motion to correct his sentence under Florida Rule of Criminal Procedure 3.800(b)(2). The trial court denied the motion, finding that a waiver occurred because Guzman moved forward with sentencing after the court specifically mentioned that he was otherwise entitled to a PSI.

For a first-time felony offender, Florida Rule of Criminal Procedure 3.710(a) provides that "[n]o sentence or sentences other than probation or the statutorily required mandatory minimum may be imposed" until after a PSI "has first been made and the recommendations of the Department of Corrections received and considered by the sentencing judge."

A PSI requirement may be waived by the defendant's attorney. *Ortiz v. State*, 9 So. 3d 774, 775 (Fla. 4th DCA 2009). A defendant's "on-the-record personal waiver of the right to a PSI is not required under current supreme court precedent," and a trial court's failure to obtain a personal waiver "does not constitute fundamental error." *Id.* at 775. This is because "[t]he right to a PSI is not a fundamental, constitutional right, nor does it go to the heart of the adjudicatory process." *Id.* at 776.

As a general proposition, "waiver is the voluntary and intentional relinquishment of a known right, or conduct which implies the voluntary and intentional relinquishment of a known right." *Knight v. State*, 267 So. 3d 38, 46 (Fla. 1st DCA 2018) (internal quotation marks omitted). Whether a waiver has occurred is a question of fact. *Id.* The question of waiver must be resolved "on a case-by-case basis in light of the specific facts and the totality of circumstances of each case." *Id.*

A defendant does not waive the right to a PSI simply because defense counsel "had an opportunity to request a presentence investigation and an opportunity to object to the sentencing without the court having first

2

ordered a presentence investigation." *Harden v. State*, 290 So. 2d 551, 551 (Fla. 1st DCA 1974).

Similarly, in *White v. State*, 271 So. 3d 1023, 1026 (Fla. 4th DCA 2019), we held that the defendant was entitled to resentencing where the trial court's error in failing to consider a mandatory PSI "was preserved in [the defendant's] rule 3.800(b)(2) motion" and where "the defense never expressly waived the right to a PSI." We emphasized that the defendant's right to a PSI "was never waived on the record." *Id.* at 1027.

Here, the question is whether a waiver occurred. Although *Ortiz* held that a defendant's personal waiver was not required, that case involved an on-the-record waiver by defense counsel. And although *White* suggests that defense counsel must expressly waive the right to a PSI, an examination of the record in *White* reveals that the issue of a PSI was never mentioned during the sentencing hearing.

Unlike previous cases dealing with the issue of waiver of a PSI, the trial court specifically mentioned that, apart from the mandatory life counts, Guzman was otherwise entitled to a PSI but he "could waive it, of course." By contrast, *Harden* does not indicate that anyone mentioned a PSI at sentencing.

Because the trial court *specifically mentioned Guzman's entitlement to a PSI* before asking the parties if they wanted to go forward with sentencing, defense counsel waived Guzman's right to a PSI by proceeding to sentencing without objecting to the absence of a PSI. This conduct "implies the voluntary and intentional relinquishment of a known right." *Knight*, 267 So. 3d at 46. The trial court alerted defense counsel to Guzman's right to a PSI; the right to a PSI was placed on the table in open court and defense counsel decided to move forward with sentencing without one. Defense counsel did not need to use the magic words "we waive a PSI." The trial court could reasonably find a waiver under these circumstances.

As the trial court recognized, a PSI would have been of "little, if any, value" because Guzman was 75 years old at the time of trial, Guzman was already subject to mandatory sentences of life in prison on the three sexual battery counts, and the trial court already knew that Guzman had no prior record.

*Affirmed.*

DAMOORGIAN and FORST, JJ., concur.

3

GROSS, J., concurs specially with opinion.

Gross, J., concurring specially.

I concur with the majority opinion. I write to explain that Guzman's legal argument on jury composition presents a classic example of how the law navigates the shifting sands of constitutional analysis. If the United States Supreme Court revisits its earlier precedent, Florida criminal law would need to make significant adjustments to the new normal.

Guzman argues that his convictions by a six-person jury violated the Sixth and Fourteenth Amendments to the United States Constitution. Although the Supreme Court held in *Williams v. Florida*, 399 U.S. 78 (1970), that six-person juries were constitutionally permissible, Guzman argues that *Williams* is "impossible to square" with the Supreme Court's ruling in *Ramos v. Louisiana*, 140 S. Ct. 1390, 1395 (2020), which concluded that the Sixth Amendment's "trial by an impartial jury" requirement encompasses what the term "meant at the time of the Sixth Amendment's adoption."

On the merits of the constitutional issue, the State responds that the United States Supreme Court has expressly upheld the constitutionality of Florida's system of six-person juries in non-death penalty criminal cases.

### *Discussion*

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ."

In *Williams v. Florida*, 399 U.S. 78, 86 (1970), the Court held that a 12-person jury "is not a necessary ingredient of 'trial by jury,'" and that the six-person jury provided for by Florida law did not violate the Sixth Amendment as applied to the States through the Fourteenth Amendment. Writing for the Court, Justice White proclaimed that "while sometime in the 14th century the size of the jury at common law came to be fixed generally at 12, that particular feature of the jury system appears to have been a historical accident, unrelated to the great purposes which gave rise to the jury in the first place." *Id.* at 89–90 (footnotes omitted).

The Court looked to the drafting history of the Sixth Amendment, emphasizing that an earlier draft's "provisions that would have explicitly tied the 'jury' concept to the 'accustomed requisites' of the time were

4

eliminated." *Id.* at 96–97. Reasoning that there was "no indication in 'the intent of the Framers' of an explicit decision to equate the constitutional and common-law characteristics of the jury," the Court turned to "other than purely historical considerations to determine which features of the jury system, as it existed at common law, were preserved in the Constitution." *Id.* at 99.

"The relevant inquiry," the Court observed, "must be the function that the particular feature performs and its relation to the purposes of the jury trial." *Id.* at 99–100. "Measured by this standard," the Court said, "the 12-man requirement cannot be regarded as an indispensable component of the Sixth Amendment," because "neither currently available evidence nor theory suggests that the 12-man jury is necessarily more advantageous to the defendant than a jury composed of fewer members." *Id.* at 100–02 (footnotes omitted).

Two years later, in *Apodaca v. Oregon*, 406 U.S. 404 (1972), the plurality in a 4-1-4 Court held that the Sixth Amendment permits non-unanimous verdicts in state criminal trials, even though the Sixth Amendment requires unanimous verdicts in federal criminal trials. Justice White, writing for the plurality, applied a *Williams*-style inquiry focusing upon "the function served by the jury in contemporary society" and concluded that the requirement of unanimity was not "of constitutional stature."[1] *Id.* at 406, 410.

In *Ballew v. Georgia*, 435 U.S. 223, 239 (1978), the Court reaffirmed *Williams* but held that "the purpose and functioning of the jury in a criminal trial is seriously impaired, and to a constitutional degree, by a reduction in size to below six members." The Court again emphasized that "[r]ather than requiring 12 members, . . . the Sixth Amendment mandated a jury only of sufficient size to promote group deliberation, to insulate members from outside intimidation, and to provide a representative cross-section of the community." *Id.* at 230.

The Supreme Court's constitutional analysis took a turn in 2020. In *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020), the Court revisited the issue of unanimity; it overruled *Apodaca* and held that the Sixth Amendment

---

[1] The fifth vote in support of the Court's judgment came from Justice Powell, who reasoned that the Sixth Amendment requires unanimity but that this element was not incorporated against the States under the Due Process Clause of the Fourteenth Amendment. *Johnson v. Louisiana*, 406 U.S. 366, 369–71 (1972) (Powell, J., concurring).

right to a jury trial—as incorporated against the States by way of the Fourteenth Amendment—requires a unanimous verdict to convict a defendant of a serious offense. The Court concluded that the original meaning of the term "trial by an impartial jury" unmistakably required a unanimous verdict:

> Wherever we might look to determine what the term "trial by an impartial jury . . . " meant at the time of the Sixth Amendment's adoption—whether it's the common law, state practices in the founding era, or opinions and treatises written soon afterward—the answer is unmistakable. A jury must reach a unanimous verdict in order to convict.

*Id.* at 1395 (ellipsis added).

The *Ramos* majority opinion does not cite *Williams* or specifically address the issue of jury size. *Ramos* was concerned with the concept of unanimity. However, the opinion contains references to the common law requirement of a 12-person jury and suggests that the Sixth Amendment affords a right to the essential elements of a trial by jury as understood and applied at common law:

> The requirement of juror unanimity emerged in 14th century England and was soon accepted as a vital right protected by the common law. As Blackstone explained, no person could be found guilty of a serious crime unless "the truth of every accusation . . . should . . . be confirmed by the unanimous suffrage of ***twelve of his equals*** and neighbors, indifferently chosen, and superior to all suspicion." ***A "'verdict, taken from eleven, was no verdict' " at all***.

> This same rule applied in the young American States. . . . [C]onsistent with the common law, state courts appeared to regard unanimity as an essential feature of the jury trial.

> It was against this backdrop that James Madison drafted and the States ratified the Sixth Amendment in 1791. By that time, unanimous verdicts had been required for about 400 years. If the term "trial by an impartial jury" carried any meaning at all, it surely included a requirement as long and widely accepted as unanimity.

> . . .

6

Nor is this a case where the original public meaning was lost to time and only recently recovered. This Court has, repeatedly and over many years, recognized that the Sixth Amendment requires unanimity. As early as 1898, the Court said that a defendant enjoys a "constitutional right to demand that his liberty should not be taken from him except by the joint action of the court and ***the unanimous verdict of a jury of twelve persons***." A few decades later, the Court elaborated that the Sixth Amendment affords a right to "***a trial by jury as understood and applied at common law, . . . includ[ing] all the essential elements as they were recognized in this country and England when the Constitution was adopted***." . . .

There can be no question either that the Sixth Amendment's unanimity requirement applies to state and federal criminal trials equally. This Court has long explained that the Sixth Amendment right to a jury trial is "fundamental to the American scheme of justice" and incorporated against the States under the Fourteenth Amendment. . . . ***So if the Sixth Amendment's right to a jury trial requires a unanimous verdict to support a conviction in federal court, it requires no less in state court***.

*Id.* at 1395–97 (emphasis added; second alteration in original; footnotes omitted).

Rejecting the "breezy cost-benefit analysis" of the *Apodaca* plurality, the *Ramos* court explained that the "deeper problem" with *Apodaca* "is that the plurality subjected the ancient guarantee of a unanimous jury verdict to its own functionalist assessment in the first place." *Id.* at 1401–02. Any functionalist assessment "overlooks the fact that, at the time of the Sixth Amendment's adoption, the right to trial by jury *included* a right to a unanimous verdict." *Id.* at 1402. The Court also criticized *Apodaca*'s reliance on a "snippet" of ambiguous drafting history: "So rather than dwelling on text left on the cutting room floor, we are much better served by interpreting the language Congress retained and the States ratified." *Id.* at 1400.

To be sure, *Ramos* did not overrule *Williams*. *Ramos* dealt with the issue of unanimity, while *Williams* dealt with the issue of numerosity. Although related, these are distinct issues. As the Arizona Court of Appeals observed, the Supreme Court in *Ramos* "did not address *any* issue of constitutionally permissible jury size, much less overrule *Williams*."

7

*State v. Khorrami*, No. 1 CA-CR 20-0088, 2021 WL 3197499, at *8 (Ariz. Ct. App. July 29, 2021), *cert. petition pending*, No. 21-1553.

It is a stretch to say that *Ramos* "effectively overruled" *Williams*. Yet, if applied to the issue of jury size, the originalist analysis in *Ramos* would undercut *Williams*'s functionalist underpinnings. At a minimum, *Ramos*— which relied on the original meaning of the Sixth Amendment rather than an analysis of the jury's role in contemporary society—suggests that *Williams* was wrongly decided. As Judge Makar has pointed out, "[i]t seems a small step from the demise of the reasoning in *Apodaca* and [its companion case] as announced in *Ramos* to conclude that the reasoning in *Williams*, upon which both decisions relied, is also in jeopardy." *Phillips v. State*, 316 So. 3d 779, 788 (Fla. 1st DCA 2021) (Makar, J., concurring); *see also Ramos*, 140 S. Ct. at 1436 (Alito, J., dissenting) ("Repudiating the reasoning of *Apodaca* will almost certainly prompt calls to overrule *Williams*.").

Under the reasoning of *Ramos*, *Williams* is subject to criticism on the ground that it "subjected the ancient guarantee of a [12-person jury] to its own functionalist assessment in the first place." 140 S. Ct. at 1401–02. Indeed, *Ramos* rejected not only *Apodaca*'s reliance upon the "function" of a jury in "contemporary society," but also *Apodaca*'s reliance upon a snippet of ambiguous drafting history.

Thus, *Ramos* repudiated both the historical analysis and the functional analysis in *Apodaca*, which relied heavily on the Court's analysis in *Williams*. So, like Wile E. Coyote momentarily suspended in midair after running off a cliff, *Williams* hovers in the legal ether, waiting for further examination by the Supreme Court.

Guzman has a credible argument that the original public meaning of the Sixth Amendment right to a "trial by an impartial jury" *included* the right to a 12-person jury. *See, e.g.*, 2 J. Story, *Commentaries on the Constitution of the United States* § 1779, n.2 (5th ed. 1891) ("A trial by jury is generally understood to mean . . . a trial by a jury of twelve men, impartially selected, who must unanimously concur in the guilt of the accused before a legal conviction can be had."); *Thompson v. Utah*, 170 U.S. 343, 349 (1898) (concluding that a "jury" within the meaning of the Sixth Amendment is "a jury constituted, as it was at common law, of twelve persons, neither more nor less"), *abrogated by Williams v. Florida*, 399 U.S. 78 (1970); *Baldwin v. New York*, 399 U.S. 117, 122, 124 (1970) (Harlan, J., concurring in part) (proclaiming that "before today it would have been unthinkable to suggest that the Sixth Amendment's right to a trial by jury is satisfied by a jury of six," and describing the *Williams* majority as

"stripping off the livery of history from the jury trial" by disregarding the "intent of the Framers" and the Court's frequent reminders that constitutional "provisions are framed in the language of the English common law, and are to be read in the light of its history"); *Williams*, 399 U.S. at 117 (Marshall, J., dissenting in part) ("I adhere to the decision of the Court in [*Thompson*] that the jury guaranteed by the Sixth Amendment consists 'of twelve persons, neither more nor less.' As I see it, the Court has not made out a convincing case that the Sixth Amendment should be read differently than it was in *Thompson* even if the matter were now before us de novo—much less that an unbroken line of precedent going back over 70 years should be overruled.").

As Judge Makar wrote in a prescient opinion that predated *Ramos*, "the future of jury size jurisprudence lies in the United States Supreme Court, which could update its functional approach based on contemporary social science research, abandon *Williams* and return to the originalist position of twelve-member juries, or—like it has done for four decades—leave it be." *Lessard v. State*, 232 So. 3d 13, 18 (Fla. 1st DCA 2017) (Makar, J., concurring).

*     *     *

***Not final until disposition of timely filed motion for rehearing.***